IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SKF USA INC. | : | |
| | : | CIVIL ACTION FILED |
| v. | : | |
| | : | NO. 13-5111   JAN 1 5 2014 |
| PIETER JOHANNIS LEENDERT OKKERSE, | : | MICHAEL E. KUNZ, Clerk |
| ET AL. | : | By _____ |

**SURRICK, J.**                                   **JANUARY 15, 2014**

### MEMORANDUM

Presently before the Court is the Motion to Dismiss of Defendants Pieter Johannis Leendert Okkerse, Wayne Blanchard, Frank Powers, and Bobby Hampton (ECF No. 25). For the following reasons, the Motion will be denied.

## I.    BACKGROUND

### A.    Procedural Background

On August 30, 2013, Plaintiff, SKF USA, Inc. ("SKF"), filed this lawsuit against Defendants, Pieter Johannis Leendert Okkerse, Wayne Blanchard, Frank Powers, and Bobby Hampton. (Compl., ECF No. 1.) On the same day, Plaintiff filed a Motion for Preliminary Injunction (ECF No. 3), a Motion for Hearing on the Motion for Preliminary Injunction (ECF No. 8), a Motion for Expedited Discovery (ECF No. 5), and a Motion to Preserve Evidence (ECF No. 7). Plaintiff's three-count Complaint alleges that Defendants violated a valid and enforceable non-competition agreement. (Compl.) Counts One and Two allege breach of contract and tortious interference with contract against all Defendants. (*Id.*) Count Three alleges tortious interference with prospective and/or contractual relations against Defendant Okkerse. (*Id.*)

On September 27, 2013, Defendants filed the instant Motion to Dismiss. (Defs.' Mot., ECF No. 25.) Defendants' Motion challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and venue under Rule 12(b)(3). (*Id.*) Defendants also contend that Plaintiff has failed to state a claim upon which relief can be granted and ask for dismissal under Rule 12(b)(6). (*Id.*) On October 7, 2013, Plaintiff filed a Response in opposition to Defendants' Motion. (Pl.'s Resp., ECF No. 26.)

### B.   Factual History[1]

Plaintiff is a Delaware corporation that provides a wide array of products and technology to a diverse industrial customer base. (Compl. ¶¶ 3, 11, 12.) Plaintiff employs thousands of employees in multiple states and maintains a principal place of business in Lansdale, Pennsylvania. (*Id.* at ¶ 3; St. Pierre Decl. ¶ 8, Pl.'s Resp. Ex. A.) On or about December 27, 2012, Plaintiff merged with its affiliate Machine Support USA Inc. ("Machine Support"). SKF was the surviving entity. (Compl.)[2] Machine Support is an organization that provides engineering services on a global scale. (Compl. ¶ 13.) Machine Support has a large customer base in the marine industry and has significant business operations in and around Houma, Louisiana. (*Id.* at ¶ 14.) Since at least 2010, SKF's Lansdale, Pennsylvania headquarters has

---

[1] We view all of the facts and draw all reasonable inferences therefrom in the light most favorable to Plaintiff, the non-moving party. *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) ("[I]n reviewing a motion to dismiss under Rule 12(b)(2), we must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."); *Fellner v. Phila. Toboggan Coasters, Inc.*, No. 05-2052, 2005 WL 2660351, at *1 (E.D. Pa. Oct. 18, 2005) ("In considering a motion to dismiss . . . under Federal Rule of Civil Procedure 12(b)(3), the court must generally accept as true the allegations in the complaint . . . and resolve all factual conflicts in the plaintiff's favor."); *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006) ("In reviewing the grant of summary judgment, we must view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion.").

[2] Following the merger, Machine Support became SKF Marine Industry Service Center, but is still commonly known in the industry as Machine Support. (Pl.'s Resp. 4.)

performed essential functions for Machine Support including payroll and human resources services. (St. Pierre Decl. ¶ 6.) The Lansdale, Pennsylvania headquarters also provides legal counsel with respect to customer contracts and other matters. (*Id.*)

Defendants are former employees of Machine Support and SKF.[3] Defendant Okkerse, who has resided in Louisiana for 2 years, was employed as the branch manager of Machine Support's service department in Houma, Louisiana. (Compl. ¶ 4; Defs.' Mot. 6.) Defendant Blanchard, a forty-six year resident of Louisiana, was employed as an alignment engineer. (Compl. ¶ 6; Defs.' Mot. 6.) Defendant Hampton, a twenty-eight year resident of Louisiana was employed as a support engineer. (Compl. ¶ 7; Defs.' Mot. 8.) Defendant Powers, has resided in Alabama for the past eighteen years and was employed as a machinist and support engineer. (Compl. ¶ 5; Defs.' Mot. 7.) Defendants performed the majority of their work for Plaintiff in the state of Louisiana, with some work also being done in Texas, Alabama, Florida, Georgia, and Mississippi. (Defs.' Mot. 6-8; St. Pierre Decl. ¶ 16.) Defendant Blanchard performed work in Pennsylvania in late 2010 through early 2011. (St. Pierre Decl. ¶ 16.) Defendants Powers and Hampton were also performing work in Pennsylvania when they terminated their employment with Plaintiff. (*Id.* at ¶ 13.) On or about July 26, 2013, Defendants resigned from Machine Support and began working for On Site Alignment LLC ("On Site"), a "direct competitor of Machine Support." (Compl. ¶ 38.)

Sometime prior to terminating their employment with Plaintiff, Defendants had signed Employee Confidentiality and Non-competition Agreements ("Agreements"). (*Id.* at ¶ 18 & Exs. A, B, C, D.) The Agreements, which apply post termination, contain a choice of law provision

---

[3] Defendants were all employed in various positions by Machine Support until January 2013. Following the merger between Machine Support and SKF in December 2012, Defendants became employed directly by SKF. (Compl. ¶¶ 4-7.)

stating that they are governed by "the substantive laws of the Commonwealth of Pennsylvania without reference to the choice of law provisions of Illinois or any other state." (*Id*. at ¶ 11 & Exs. A, B, C, D.) The Agreements further state that "[a]ny disputes arising under this Agreement shall be tried in the courts sitting within the Commonwealth of Pennsylvania, and Employee hereby consents and submits his or her person to the jurisdiction of any such court for any such purpose." (*Id*.) In addition, the Agreements stipulate that "([b]y executing this Agreement, Employee expressly represents that he or she had read it, understands its terms and has had the opportunity (whether exercised or not) to consult with legal counsel regarding it.") (*Id*. at ¶ 14 & Exs. A, B, C, D.)

## II.   DISCUSSION

### A.   Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

Defendants argue that Plaintiff's Complaint should be dismissed because this Court lacks personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Defs.' Mot. 10.) Defendants' argument is based on the assertion that the forum selection clause - "the sole potential basis for specific jurisdiction" - in this case is invalid. (*Id*.) More specifically, Defendants argue that Louisiana law, which generally prohibits choice of law, forum selection, non-competition, and non-solicitation clauses, should govern this action. (*Id*. at 12.) In the alternative, Defendants argue that the forum selection clause is not enforceable under Pennsylvania law. (*Id*. at 14-15.)

Plaintiff counters that the choice of law provision contained within the Agreements is valid and that under Pennsylvania law the forum selection clause should be upheld. (Pl.'s Resp. 8.) We address the choice of law question first since it is a primary basis upon which the parties' arguments are based.

4

### 1.    Choice of Law

It is well established that "[a] federal court exercising diversity jurisdiction must apply

the choice of law rules of the forum state." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55

(3d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)).    In

Pennsylvania, courts will "generally honor the intent of the contracting parties and enforce

choice of law provisions in contracts executed by them." *Id.* More specifically, Pennsylvania

has adopted Section 187 of the Restatement, (Second) of Conflict of Laws, which          provides

that the law of the chosen state will be applied:

> unless either (a) the chosen state has no substantial relationship to the parties or
> the transaction and there is no reasonable basis for the parties' choice, or (b)
> application of the law of the chosen state would be contrary to a fundamental
> policy of a state which has a materially greater interest than the chosen state in the
> determination of the particular issue . . . .

*Id.* (citing *Schifano v. Schifano*, 471 A.2d 839, 843 n.5 (Pa. Super. Ct. 1984)); Restatement

(Second) of Conflict of Laws § 187 (1971).

### i.    Section 187(2)(a)

Defendants assert that we should apply Louisiana law because Pennsylvania does not

have a substantial relationship to the parties or the transaction. (Defs.' Mot. 11.) We disagree.

It is well settled that when a corporation has a principal place of business within a state, that state

bears a substantial relationship to the parties. *Kruzits*, 40 F.3d at 56; *see also Perma-Liner*

*Indus. Inc. v. U.S. Sewer & Drain, Inc.*, 630 F. Supp. 2d 516, 522 (E.D. Pa. 2008) (finding that

the contractually chosen state had a substantial relationship to the parties since it was the location

where the plaintiff maintained its principal place of business); *Intermetro Indus. Corp. v. Kent*,

No. 07-0075, 2007 WL 518345, at *2 (E.D. Pa. Feb. 12, 2007) ("Pennsylvania does have a

substantial relationship to this matter as it is where [the plaintiff] maintains its principal place of

5

business . . . ."). In the instant case, Plaintiff maintains a principal place of business in Lansdale, Pennsylvania. Therefore, we find that Pennsylvania bears a substantial relationship to the parties.

### ii.    Section 187(2)(b)

Section 187(2)(b) of the Restatement requires a two part inquiry. First, we must determine whether Louisiana has a materially greater interest in this case than Pennsylvania. *Coface Collections N. Am. v. Newton*, 430 F. App'x 162, 167 (3d Cir. 2011). If we determine that Louisiana has a materially greater interest, then we must decide whether application of Pennsylvania law would be contrary to a fundamental public policy of that state. *Id.*

Courts have differing views as to what is necessary to demonstrate a "materially greater interest." The Court of Appeals for the Fourth Circuit and the Court of Appeals for the Eighth Circuit have held that the state in which an individual lives and works has a materially greater interest in the determination of an issue than the state in which a corporate litigant conducts business. *Barnes Grp., Inc. v. C & C Prods., Inc.*, 716 F.2d 1023, 1030 (4th Cir. 1983) (striking down a choice of law clause and finding that a state's interest in protecting its resident workers is greater than any generalized interest that a contractually chosen state has in applying its law to protect the interstate contracts of its domiciliary); *DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 896 (8th Cir. 2006) (striking down a choice of law clause where the only connection to the chosen state was the plaintiff's headquarters and principal place of business).

Similarly, the Court of Appeals for the Seventh Circuit and the Court of Appeals for the Tenth Circuit have held that a party's incorporation within a state, standing alone, is an insufficient basis upon which to uphold a choice of law clause. For example, in *Curtis 1000, Inc. v. Suess*, the defendant was incorporated in the state of Delaware and headquartered in Georgia.

6

24 F.3d 941, 948-49 (7th Cir. 1994). The Seventh Circuit struck down the choice of law clause designating Delaware law because the defendant had no other connections to that state. *Id.* However, in dicta, the Court noted that a clause designating Georgia law would likely have been upheld since "Georgia has as much interest in regulating the out of state operations of 'its firm' as [the plaintiff's state] does in protecting its citizens . . . ." *Id.* at 949; *see, e.g., King v. PA Consulting Grp., Inc.,* 485 F.3d 577, 585-86 (10th Cir. 2007) (finding that the interest of the defendant's state of incorporation was "at most tangential" since the defendant was not even headquartered in that state).

Conversely, the Third Circuit has upheld choice of law provisions applying the law of the state in which a party is incorporated and/or headquartered. In *Coface*, the Third Circuit was confronted with the same Louisiana statute at issue in this case. 430 F. App'x at 163. The plaintiff, a national company incorporated in Delaware, sought enforcement of a non-competition agreement designating Delaware law. *Id.* at 163-64. The defendant, who lived in Louisiana, worked in Louisiana, and signed the contract in Louisiana, argued that Louisiana law should govern. *Id.* at 163-64, 68. The Third Circuit rejected this argument, concluding that under Section 187(2)(b), geographic contacts alone did not necessitate a finding that Louisiana had a materially greater interest than Delaware. *Id.* at 167-68. The Court cited Delaware's choice of law statute, 6 Del. C. § 2708(a), which provides that a validly executed choice of law clause establishes a "significant relationship" with the state and "*shall be enforced whether or not there are other relationships with the State.*" *Id.* at 167 (emphasis in original). The Court further noted that this was not a case where both parties were Louisiana citizens. *Id.* at 168. On the contrary, the plaintiff was a national company. *Id.* Finally, the Court held that Delaware had a "substantial interest in enforcing [the] voluntarily negotiated contract clause that explicitly

7

designat[ed] Delaware law to govern. *Id.* That interest was not overcome by any other state's materially greater interest." *Id.*; *see, e.g., Gay v.CreditInform*, 511 F.3d 369, 390 (3d Cir. 2007) ("Though it certainly is true that Pennsylvania has an interest in protecting its consumers, we cannot say that Virginia has a lesser interest in protecting businesses located in it.").

Courts in the Third Circuit have also noted that a company's connection to a state is greater when it is headquartered there. In *Synthes, Inc. v. Emerge Med., Inc*., the plaintiff, a Pennsylvania corporation with employees located in multiple states, sought enforcement of a choice of law provision applying Pennsylvania law. No. 11-4566, 2012 WL 4205476, at *21 (E.D. Pa. Sept. 19, 2012). The defendant, a Colorado citizen employed by a Colorado business, argued for the application of Colorado law. *Id.* at 19, 21. The court upheld the choice of law provision and distinguished the Fourth Circuit's holding in *King* by noting that Pennsylvania served as the center of the plaintiff's corporate work. *Id.* at 21. Therefore, the plaintiff's interest in seeking to deal uniformly with its employees was furthered by the uniform application of Pennsylvania law. *Id.* at 21 n.18; *see also Select Med. Corp. v. Hardaway*, No. 05-3341, 2006 WL 859741, at *2-3 (E.D. Pa. Mar. 24, 2006) (upholding a corporate litigant's choice of law and holding that "[r]egardless of [a state's] interest in the transaction of its citizens, Pennsylvania corporations have an interest in uniformity in dealings with their locations throughout the country.").

Similarly, in *Britton v. Whittmanhart, Inc*., a Delaware corporation headquartered in Illinois sought enforcement of a choice of law provision designating Illinois law. No. 09-1593, 2009 WL 2487410, at *1 (E.D. Pa. Aug. 13, 2009). The plaintiff, a Pennsylvania citizen, argued that Pennsylvania law should apply because it was the state in which the contract was executed, signed, and carried out. *Id.* at 1-2. The court, applying Pennsylvania's choice of law, rejected

8

this argument and held that because the defendant conducted business in multiple states, it was reasonable to include a "'choice of law provision in its financial agreements to ensure that those agreements [were] governed by the laws of its principal place of business.'" *Id.* (quoting *Kruzits*, 40 F.3d at 56). Moreover, because the defendants "headquarters, payroll department, primary decision making and location of corporate officers and operations were located in Illinois" it could not be said that any other state had a materially greater interest. *Id.* at 3.

Defendants have failed to establish that Louisiana's interest in this case is materially greater than Pennsylvania's. It is not enough to assert that Louisiana has a greater interest simply because application of Pennsylvania law runs contrary to a fundamental Louisiana policy. Moreover, the fact that Defendants may live in Louisiana, work in Louisiana, or signed their Agreements in Louisiana does not necessarily establish that Louisiana has a materially greater interest than Pennsylvania. In focusing upon Louisiana's prohibition on choice of law, forum selection, non-competition, and non-solicitation agreements, Defendants have failed to address the interest that Pennsylvania has in this case.

Pennsylvania has an interest in enforcing a voluntarily negotiated contract that explicitly designates the application of Pennsylvania law. This interest stems, at least in part, from the recognition that uniformity of contract serves a strong public policy. *See Hopkins v. GNC Franchising, Inc.*, No. 05-1510, 2006 WL 2266253, at *4 (E.D. Pa. Jan. 13, 2006); *see also* Restatement (Second) of Conflict of Laws § 187 cmt. e (1971) ("Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract.") Equally apparent is the fact that Pennsylvania has an interest in protecting companies that conduct business within its borders. The Supreme Court of Pennsylvania has recognized that non-competition agreements

9

"have developed into important business tools to allow employers to prevent their employees and agents from learning trade secrets, befriending their customers and then moving into competition with them." *Victaulic Co. v. Tieman*, 499 F.3d 227, 237 (3d Cir. 2007) (quoting *Hess v. Gebhard & Co. Inc.*, 808 A.2d 912, 918 (Pa. 2002)). Therefore, although non-competition agreements are generally disfavored, courts have recognized that the public has an interest in the enforcement of agreements that are "freely entered into by the parties." *Coventry First, LLC v. Ingrassia*, No. 05-2802, 2005 WL 1625042, at *12 (E.D. Pa. July 11, 2005).

We cannot say that Louisiana's interest in this case is materially greater than Pennsylvania's. This is not a case where both parties are citizens of Louisiana. Plaintiff is a national company with thousands of employees located in multiple states. Moreover, the choice of law clause at issue here designates the law of the state in which Plaintiff maintains a principle place of business. Indeed, Plaintiff's Lansdale, Pennsylvania office provides Machine Support with payroll services, human resources services, and legal services to its many employees. We are satisfied that Louisiana does not have a materially greater interest in this case than does Pennsylvania.[4]

## 2. *Personal Jurisdiction*

Having determined that Pennsylvania law governs this case, it is necessary to determine whether this Court has personal jurisdiction over Defendants. In order to survive a motion to

---

[4] Since Defendants failed to establish a materially greater interest, it is unnecessary to determine whether application of Pennsylvania law runs contrary to a fundamental public policy of Louisiana. Nevertheless, we note that it is unclear whether "the high threshold for establishing such a fundamental policy ... would be met here." *Coface*, 130 F. App'x at 168. Courts do not override contractually chosen law simply because it diverges in degree from the state whose law would otherwise apply. *Barnes*, 716 F.2d 1030-31. Nor, do courts disregard the law of the chosen state simply because it would lead to a different result. Restatement (Second) of Conflict of Laws Section 187(2)(b), cmt. g. (1971).

10

dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker*, 292 F.3d at 368)). Personal jurisdiction may be exercised over an out-of-state defendant only to the extent permissible by the law of the state in which the district court sits, and then only to the extent that the exercise of jurisdiction is consistent with the requirements of the United States Constitution. Fed. R. Civ. P. 4(e); *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 1990) (holding that a district court may assert personal jurisdiction over a non-resident defendant to the extent permissible under the law of the state in which the district court sits).

Pennsylvania's long-arm statute allows a court to exercise jurisdiction over a non-resident defendant "to the fullest extent allowed under the Constitution of the United States and may be based upon the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b); *see also Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). The due process clause of the United States Constitution requires a non-resident to have certain "minimum contacts" with the forum state in order for a court in that forum to properly exercise personal jurisdiction. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction may be exercised under the theory of general jurisdiction or under the theory of specific jurisdiction. General jurisdiction may be exercised over a non-resident defendant when the defendant has "continuous and systematic" contacts with the forum state. *Id.* at 317; *see also Reliance Steel Prods. Co. v. Watson, Ess, Marshal & Enggas*, 675 F.2d 587, 588 (3d Cir. 1982) ("If the claim pursued arises from non-forum related activity, the plaintiff must demonstrate that in other respects the defendant has maintained 'continuous and substantial'

11

forum affiliations."). This Court may assert general jurisdiction over a person when a defendant "is generally present in Pennsylvania, has consented to suit there, or systematically or continuously conducts business in that state . . ." Fields v. Ramada Inn, Inc. 816 F. Supp. 1033, 1036 (E.D. Pa. 1993).

Specific jurisdiction may be exercised over a non-resident defendant when the "claim is related to or arises out of the defendant's contacts with the forum." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). For specific jurisdiction, the defendant must have minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. The plaintiff must show that: (1) there is a "substantial connection" between the defendant and the forum state, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985);[5] and (2) the exercise of jurisdiction

---

[5] Pennsylvania's long-arm statute provides for specific jurisdiction when the cause of action arises from a defendant's business transactions within the Commonwealth. 42 Pa. Cons. Stat. Ann. §5322(a)(1). Specifically, the statute states that:

A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

(iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.

(iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.

would not make litigation "so gravely difficult and inconvenient" that the party is severely disadvantaged, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972).

Defendants assert that this Court lacks general jurisdiction because Plaintiff's Complaint fails to plead "continuous or systematic" contacts between Defendants and Pennsylvania. (Defs.' Mot. 17.) Further, Defendants argue that general jurisdiction is lacking because none of the Defendants "reside in Pennsylvania; work in Pennsylvania; have any bank accounts in Pennsylvania; own any property in Pennsylvania; or could be served with process in Pennsylvania." (*Id.*) Plaintiff counters that Defendants' focus on minimum contacts is misplaced given the fact that Defendants signed a valid forum selection clause. (Pl.'s. Resp. 11-12.)

We have previously recognized that a defendant may consent to personal jurisdiction and venue through the execution of a valid forum selection clause. *PNC Bank, Nat. Ass'n. v. Kanaan*, No. 11-7770, 2012 WL 1835534, at *7 (E.D. Pa. May 21, 2012) (citing *Provident Mut. Life Ins. Co. v. Bickerstaff*, 818 F. Supp. 116, 120 (E.D. Pa. 1993). In *Kanaan*, we noted that in order to establish personal jurisdiction, the plaintiff must generally "show that the defendant has sufficient minimum contacts with the forum state such that the assertion of personal jurisdiction over him comports with the notions of fair play and substantial justice . . . ." *Id.* (citations omitted). This analysis is inappropriate however, when the parties have entered into an agreement containing a forum selection clause. *Id.* In those cases, the question of whether a party has consented to in personam jurisdiction is dependent upon the validity and effect of the forum selection clause. *Id.*

---

(v) The ownership, use or possession of any real property situate within this Commonwealth.

42 Pa. Cons. Stat. Ann. §§5322(a)(1)(i)-(v).

### 3.    *Forum Selection Clause*

Forum selection clauses are "prima facie valid" and should be enforced unless shown to

be "unreasonable' under the circumstances." *M/S Breman*, 407 U.S. at 9-10; *Foster v.*

*Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991). A forum selection clause will be

enforced:

> unless the party objecting to its enforcement establishes (1) that it is the result of
> fraud or overreaching, (2) that enforcement would violate a strong public policy
> of the forum, or (3) that enforcement would in the particular circumstances of the
> case result in litigation in a jurisdiction so seriously inconvenient as to be
> unreasonable.

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983) (citing *M/S*

*Bremen*, 407 U.S. at 15, 16, 18). The party opposing a forum selection clause bears the heavy

burden of proving that the clause should not be enforced. *Bickerstaff*, 818 F. Supp. at 118. This

burden requires more than a showing of inconvenience or additional expense. *Id*; *see also*

*Cedarbrook Assocs. v. Equitec Sav. Bank*, 678 F. Supp. 107, 108 (E.D. Pa. 1987) (citations

omitted).

#### i.    Fraud or Overreaching

Defendants do not assert that the forum selection clause was the result of fraud. Rather,

Defendants argue that it was the result of overreaching because its sole purpose was the

avoidance of unfavorable Louisiana law. (Defs.' Mot. 14-15.) Defendants contend that Plaintiff

was aware of Louisiana's prohibition on forum selection, non-competition, and non-solicitation

agreements and chose Pennsylvania law in an effort to circumvent this ban. (*Id*. at 15.)

Defendants further assert that the Agreements were not freely negotiated because Defendants did

not have an opportunity to consult with legal counsel prior to signing them. *Id*. Defendants'

arguments are unpersuasive.

14

Defendants have failed to point to any evidence supporting their allegation that the forum selection clause was included in order to defeat unfavorable Louisiana law. Plaintiff, on the other hand, has offered a compelling reason for choosing Pennsylvania law. As discussed above, Plaintiff maintains a principal place of business in Pennsylvania. It is from this location that Plaintiff provides support to its employees who are located throughout the country. It is reasonable to conclude that Plaintiff selected Pennsylvania law in order to ensure the uniform treatment of its employees. Furthermore, by signing the Agreements, Defendants acknowledged that they knew that they "had the opportunity (whether exercised or not) to consult with legal counsel . . . ." (Compl. ¶ 14 & Exs. A, B, C, D.) The failure of Defendants to recognize the existence of a forum selection clause does not give rise to an inference of fraud or overreaching. *Campanini v. Studsvik, Inc.*, No. 08-5910, 2009 WL 926975, at \*6 (E.D. Pa. Apr. 6, 2009); *see e.g. Perry v. H&R Block E. Enters., Inc.*, No. 04-6108, 2007 WL 954129, at \*11 (E.D. Pa. Mar. 27, 2007) (rejecting the defendant's argument that non-competition agreement was invalid because defendant did not read it) (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). Neither does the fact that Defendants failed to seek legal counsel before signing the Agreements. *Campanini*, 2009 WL 926975, at \*6.

### ii.    Inconvenience

Defendants argue that enforcement of the forum selection clause would "greatly inconvenience defendants and third party witnesses in this case." (Defs.' Mot. 14.) Defendants assert that having to travel from Louisiana and/or Alabama to Pennsylvania would result in a personal and financial hardship. *Id*. Defendants also assert that litigation in Pennsylvania would require the transportation of third party witnesses and documentation, which are "believed to be located in Louisiana." *Id.*

Defendants' argument regarding financial hardship does not establish that the forum selection clause is unreasonable or that Defendants will be deprived of their day in court. *Campaini*, 2009 WL 926975, at *6 ("Although litigating in Tennsesse may increase costs, [plaintiff] is far from deprived of his day in court."). Defendants admit that their legal expenses are being paid by their new employer. (Okkerse Dep. 156, Defs.' Mot. Ex. B.) Even if Defendants' new employer does not cover Defendants' transportation expenses, this is not a sufficient reason to invalidate a forum selection clause.[6] *Kanaan*, 2012 WL 1835534, at *1, 7-8 (finding that the defendant, a Michigan resident, did not suffer serious inconvenience litigating in Pennsylvania); *De Lage Landen Fin. Servs., Inc. v. Mid-Am. Healthcare LP*, No. 08–1264, 2008 WL 3889996, at *1, 5 (E.D. Pa. Aug. 20, 2008) (finding that "although litigating in Pennsylvania [would] be inconvenient for [Missouri] [d]efendants, this inconvenience was foreseeable at the time of the agreements and does not, standing alone, render this [c]ourt's exercise of jurisdiction unreasonable") (citations omitted)); *Bickerstaff*, 818 F. Supp. at 116 (enforcing forum selection clause even though defendant did not conduct business or reside in Pennsylvania and all of his witnesses resided in California). Under the circumstances we cannot find that enforcing the forum selection clause would result in such a serious inconvenience as to be unreasonable.

As we observed in *Kanaan*, the exercise of personal jurisdiction over a defendant, whether general or specific, must comport with "traditional notions of fair play and substantial justice," such that the parties can "reasonably anticipate being haled into court [in this forum]." 2012 WL 1835534, at *8 (citing *Integral Nuclear Assocs., LLC v. Nair*, No. 05-382, 2005 WL 2012036, at *4 (E.D. Pa. Aug. 19, 2005) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Pennsylvania law explicitly recognizes that general jurisdiction may be

---

[6] We also note that the use of video conferencing, videotape depositions for trial, and the internet are commonplace in litigation today.

16

asserted when a defendant "has consented to suit" in Pennsylvania. 42 Pa. Cons. Stat. Ann. §

5301(a)(1)(iii). Defendants have done so here by executing, and thereby agreeing to the terms of,

the Agreements, which contain a valid and enforceable forum selection clause. By agreeing to

be subject to this Court's jurisdiction, Defendants were on notice and could "reasonably

anticipate being haled into court" in Pennsylvania. Defendants have not met their burden in

establishing that the forum selection clause should not be enforced. Accordingly, we have

personal jurisdiction over Defendants.[7]

## B.   Defendant's Motion to Dismiss for Improper Venue

Defendants ask this Court to dismiss this action for improper venue, and/or transfer this

action to the Eastern District of Louisiana for the convenience of the parties and witnesses.

(Defs.' Mot. 19.) Defendants contend that "no material events or omissions took place in the

Eastern District of Pennsylvania and, thus, venue in this district is improper." (*Id.*) In the

alternative, Defendants seek a transfer to the Eastern District of Louisiana for the "convenience

of the parties and witnesses." (*Id.*) Plaintiff counters that venue is proper and that the relevant

considerations in this case do not favor transfer. (Pl.'s Resp. 20-21.)

---

[7] Since we have general jurisdiction over Defendants, we need not engage in a specific
jurisdiction analysis. *See, e.g., InfoMC, Inc. v. Comprehensive Behavioral Care, Inc.*, No. 10-
4907, 2012 WL 1114360, at *9 (E.D. Pa. Mar. 30, 2012) (holding that since the court already
determined that it had general jurisdiction over a defendant, it was unnecessary to engage in the
specific jurisdiction analysis); *Corporate Aviation Concepts, Inc. v. Multiservice Corp.*, No. 03-
3020, 2003 WL 22794693, at *4 n.4 (E.D. Pa. Nov. 13, 2003) ("Because I find that this court has
general jurisdiction, it is not necessary to consider the issue of specific jurisdiction."); *see also
Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998) ("When a state
has general jurisdiction over a party, that party can be haled into court in that state 'regardless of
whether the subject matter of the cause of action has any connection to the forum.'") (quotation
omitted); *Modern Mailers, Inc. v. Johnson & Quin, Inc.*, 844 F. Supp. 1048, 1051 (E.D. Pa.
1994) ("Personal jurisdiction may be either specific or general.").

### 1.    *Improper Venue*

Rule 12(b)(3) allows a party to dismiss an action for improper venue. Fed. R. Civ. P.

12(b)(3). The movant bears the burden of establishing improper venue. *Myers v. Am. Dental*

*Ass'n.*, 695 F.2d 716, 724 (3d Cir. 1982). The federal venue statute states, in relevant part, that:

> (b) A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). This venue statute does not require that a court determine the "best" forum,

*Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (citation omitted),

or "the forum with the most substantial events," *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*,

71 F. Supp. 2d 438, 444 (E.D. Pa. 1999). Indeed, venue may be proper in more than one

district. *Id.*

Although venue may be proper in Louisiana as Defendants suggest, it is clear that venue

is also proper in this District in light of the forum selection clause and our determination that

Defendants are subject to personal jurisdiction here. *Quinn v. Worldwide Comm'ns, Inc.*, No.

10-1512, 2011 WL 673748, at *5 (E.D. Pa. Feb. 16, 2011) ("Although venue may be proper in . .

. Washington or Colorado as Defendants suggest, it is clear that venue is proper in this District

where this Court has determined that Defendants are subject to personal jurisdiction. Therefore,

Plaintiff's Complaint will not be dismissed on the basis of improper venue."); *Bickerstaff*, 818 F.

Supp. at 119 ("Where, however, a forum selection clause exists, its effect on the issue of the

appropriateness of venue is essentially identical to its effect on the question of jurisdiction.")
(citations omitted). Therefore, we will not dismiss this action on the basis of improper venue.

## 2. *Defendants' Motion to Transfer Venue*

Even though venue is proper in this District, this action may nevertheless be transferred
to another venue pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of
parties and witnesses, in the interest of justice, a district court may transfer any civil action to
any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *Lempke v.
Gen. Elec., Co.*, Nos. 10-5380, 10-5426, 2011 WL 3739499, at *2 (E.D. Pa. Aug. 25, 2011)
(citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995) (stating that "Section
1404(a) provides for the transfer of a case where both the original and the requested venue are
proper")). An action may be transferred to another district if (1) venue is proper in the transferee
district, and (2) the transferee district can exercise personal jurisdiction over the defendants.
*Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). District courts have broad
discretion in deciding whether to transfer an action for improper venue or inconvenience. "[T]he
plaintiff's choice of forum is entitled to great weight and the burden is therefore on the moving
party to justify the transfer." *Bickerstaff*, 818 F. Supp. at 119 (citing *Leonardo Da Vinci's
Horse, Inc. v. O'Brien*, 761 F. Supp. 1222, 1229 (E.D. Pa. 1991)); *Nat'l Mortg. Network, Inc. v.
Home Equity Cntrs., Inc.*, 683 F. Supp. 116, 119 (E.D. Pa. 1988); *see also Shutte*, 431 F.2d at 25
(noting that "a plaintiff's choice of a proper forum is a paramount consideration in any
determination of a transfer request, and that choice should not be lightly disturbed"). A
plaintiff's choice of forum "is not always controlling [however]; otherwise Section 1404(a)
would be meaningless." *Bartolacci v. Church of Jesus Christ of Latter-Day Saints*, 476 F. Supp.
381, 383 (E.D. Pa. 1979).

The Third Circuit has compiled a list of factors that bear on motions to transfer venue. These factors fall into two categories: private interests and public interests. *Jumara*, 55 F.3d at 879. Private interests include: (1) both the plaintiff's and defendant's forum preferences; (2) whether the claim arose elsewhere; (3) the convenience of the parties "as indicated by their relative physical and financial condition"; (4) the convenience of the witnesses, but only to the extent that it bears on their availability for trial; and (5) the location of books and records. *Id.* (citations omitted). Public interests include:

> [E]nforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted). Not all factors will apply in a given case, and the court may address other considerations if pertinent. The statute demands an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The United States Supreme Court recently clarified that the analysis for considering a section 1404(a) motion differs "when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 31 (1988)). The Court noted that:

> When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. As we have explained in a different but instructive context whatever inconvenience the parties would suffer by being forced to litigate in the contractual forum as they agreed to do was clearly foreseeable at the time of contracting.

*Id.* at 582 (citations and internal quotations omitted). Here, Paragraph 11 of the Agreements

states that "[a]ny disputes arising under this Agreement shall be tried in the courts sitting within the Commonwealth of Pennsylvania, and Employee hereby consents and submits his or her person to the jurisdiction of any such court for any such purpose." (Compl. ¶ 11 & Exs. A, B, C, D.) This language reflects the parties' agreed-upon forum preference. Thus, we find that the private-factors weigh entirely in favor of denying Defendants' Motion to Transfer.

Defendants' Motion fails to address any of the public interest factors. Our review of the record fails to reveal any reason why it would be more difficult to enforce a judgment in this case in the Eastern District of Pennsylvania than it would be if the case were decided in the Eastern District of Louisiana. Furthermore, the trial judge's familiarity with the applicable state law weighs in favor of Plaintiff, since the Agreements include a choice of law provision applying Pennsylvania law. These factors favor denial of Defendants' motion to transfer venue. *See De Lage Landen Fin. Servs., Inc.*, 2008 WL 3889996, at *8 (finding public factors to weigh against transfer since defendants did not show why it would be more difficult to enforce the judgment in the Eastern District of Pennsylvania than in the Eastern District of Missouri and since the contract included a choice of law provision applying Pennsylvania law). As discussed above, Defendants have made no showing that the forum selection clause was unreasonable or unjust, was obtained by fraud or overreaching, or otherwise violated Pennsylvania public policy. Accordingly, we will deny Defendants' Motion to transfer venue to the Eastern District of Louisiana.

### C. Defendants' Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a Rule 12(b)(6) motion "courts [must] accept all factual allegations as true, construe

21

the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

In order to survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005).

Defendants argue that Counts One, Two, and Three should be dismissed because the non-competition and non-solicitation provisions of the Agreements are unenforceable under Pennsylvania law.[8] In making this argument, Plaintiff contends that the non-competition

---

[8] Plaintiff argues that we should apply Pennsylvania law to Counts Two and Three because Pennsylvania courts routinely apply contractual choice of law clauses to related tort claims. (Pl.'s Mot. 27 n.11.) Defendants make no argument on this issue and instead contend that all counts should be dismissed because the Agreements are unenforceable under Pennsylvania law. We note that "[c]ontractual choice of law provisions . . . do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship." *Jiffy Lube Intern., Inc. v. Jify Lube of Pa., Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994). Thus, courts must determine "based on the provision's 'narrowness or breadth, whether the parties intended to encompass all elements of their association.'" *Buddy's Plant*

22

agreements were (1) not supported by adequate consideration, (2) not reasonably necessary for Plaintiff's protection, and (3) not reasonable in geographic scope. (Defs.' Mot.) Plaintiff counters that these arguments are premature and ignore Plaintiff's well-pleaded Complaint. (Pl.'s Resp.)

### *1. Consideration*

In order for a non-competition agreement to be enforced under Pennsylvania law it must "be supported by adequate consideration." *Insulation Corp. of Am. v. Brobston*, 667 A.2d 729, 733 (Super. Ct. Pa. 1995). "When the restrictive covenant is contained in the initial contract of employment, consideration for the restrictive covenant is the job itself." *Maint. Specialties, Inc. v. Gottus*, 314 A.2d 279, 282-83 (Pa. 1974). However, where a restrictive covenant is entered into subsequent to the commencement of employment, it must be supported by new consideration. *Brobston*, 667 A.2d at 733.

Defendants assert that they signed the Agreements after the commencement of their employment and did not receive any new consideration, change in benefits, or change in

---

*Plus Corp. v. CentiMark Corp.*, No. 10-670, 2013 WL 169697, at *5 (E.D. Pa. Jan. 16, 2013) (quoting *Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc.*, 795 F. Supp. 151, 157 (W.D. Pa. 1992)).

Here, the Agreements state that "[a]ny disputes arising under this Agreement shall be tried in the courts sitting within the Commonwealth of Pennsylvania . . . ." (Comp. ¶ 11 & Exs. A, B, C, D.) This language is sufficiently broad to embrace Plaintiff's tort claims in Counts II and III. *Compare CentiMark*, 2013 WL 169697, at *5 (applying choice of law clause to tort claims where it applied to actions "'relating to" or "arising out of the work to be performed" and not merely that the "agreement shall be governed by the laws of Pennsylvania."'), *and PTI Servs., Inc. v. Quotron Sys., Inc.*, No. 94-2068, 1995 WL 241411, at *8 (E.D. Pa. Apr. 19, 1995) (applying choice of law clause to tort claims where language stated that the parties "consent and submit to the jurisdiction of the state courts of New York . . . with respect to the adjudication of any matter arising hereunder"), *with Black Box Corp. v. Markham,* 127 F. App'x 22, 25 (3d Cir. 2005) (finding that where agreement stated that it would be "governed by, and construed and enforced in accordance, with the law of Pennsylvania" the choice of law clause was narrowly tailored to encompass only the underlying agreement).

employment status. (Declarations, Defs.' Mot. Exs. A, B, C.) In making this argument,

Defendants rely upon declarations attached to their Motion. However, we are not at a stage in

the proceedings where such proofs may be considered. *See Vitaulic* 499 F.3d at 236. Since

these documents are outside the pleadings,[9] we cannot consider them for the purpose of deciding

Defendants' Motion. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c),

matters outside the pleadings are presented to and not excluded by the court, the motion must be

treated as one for summary judgment under Rule 56). Plaintiff's Complaint alleges that the

Agreements "were ancillary to Defendants' employment with Machine Support, [and] were

supported by adequate consideration . . . ." (Compl. ¶ 28.) Accepting Plaintiff's allegations as

true, as we must, Plaintiffs' pleadings are sufficient to withstand Defendants' challenge as to the

issue of consideration.

### 2.    *Reasonably Necessary*

Defendants contend that the Agreements are unreasonable because Plaintiff makes no

allegation that Defendants received special skills or training from Plaintiff during their

employment. (Defs.' Mot. 26.) Defendants also assert that the noncompetition and/or non-

solicitation provisions in the Agreement are unrelated to the protection of confidential or

proprietary information because there are separate provisions in the Agreements directly

addressing the disclosure of such information. (*Id.*) Finally, Defendants contend that the non-

competition and non-solicitation clauses are not necessary to protect Plaintiff's good will

because Plaintiff is a large company, and "any good will that [Plaintiff] may have with its

---

[9] When ruling on a 12(b)(6) motion courts must consider only "the allegations in the complaint, . . . documents that are attached[,] . . . matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." *Siwulec v. J.M. Adjustment Servs., LLC.*, 465 F. App'x 200, 202 (3d Cir. 2012) (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).

shipping and/or ship building customers would be de minimims." (*Id.* at 26-27.) We are not convinced.

Plaintiff's Complaint alleges that its business operates on intellectual property and trade secrets, "including but not limited to methods of doing business; proprietary products and equipment; valuation methods; computer programs and data bases; business ideas; billing procedures; pricing and commission data; customer lists; and any other customer data." (Compl. ¶ 29.) Among other things, Plaintiff uses these trade secrets to "retain and service customers, secure new customers . . . and to establish a competitive edge." (*Id.* at ¶ 32.) The Complaint also states that Defendants were required to sign the Agreements in order to protect the confidentiality of such information. (*Id.* at 31.)

Contrary to Defendants' argument, it is not necessary for an employee to receive specialized training or skills in order for a restrictive covenant to be enforced. *Girard Inv. Co. v. Bello*, 318 A.2d 718, 722 (Pa. 1974) (quoting *Hays v. Altman*, 225 A.2d 670, 672 (Pa. 1967)). Rather, the enforceability of a restrictive covenant is determined by whether the covenant is "reasonably necessary for the protection of the employer's protectable business interests." *Hess*, 808 A.2d at 920. Protectable interests include, "trade secrets, confidential information, good will, and unique or extraordinary skills." *Id.* In fact, courts have extended protection to exactly the type of information listed in Plaintiff's Complaint. *BIEC Inter., Inc. v. Global Steel Servs., Ltd.*, 791 F. Supp. 489 (E.D. Pa. 1992) (noting that in addition to customer lists, protection has been extended to cost and pricing information of an employer's product or services, business plans, marketing strategies, and financial projections, and the terms of specific customer accounts). Such information qualifies as protected trade secrets where the degree of secrecy is "such that it would be difficult for others to obtain the information without using improper

25

means." *Nat. Risk Mgmt., Inc. v. Bramwell*, 819 F. Supp. 417 (E.D. Pa. 1993).

Plaintiff's Complaint asserts that it relies upon its trade secrets to "retain and service customers, secure new customers . . . and establish a competitive edge." (Compl. ¶ 32.) The Complaint further asserts that Defendants, who were required to sign non-competition agreements in order to protect Plaintiff's trade secrets, are using this information to directly compete with Plaintiff. (*Id.* at 44.) Plaintiff has asserted a legitimate and protectable interest. The question of whether the Agreements are reasonably related to the protection of that interest is "a factual one, requiring consideration of all the facts and circumstances.'" *Vitaulic*, 499 F.3d at 234-35 (quoting *WellSpan Health v. Bayliss*, 869 A.2d 990, 999 (Pa. Super. Ct. 2005)). Such a question simply cannot be answered at the pleading stage. *Id.* at 237.

### 3. Geographic Limitation

Defendants assert that the Agreements are "unenforceable on their face" because they contain no geographic limitation. (Defs.' Mot. 26.) We disagree. In order to be enforceable, a covenant not to compete must be reasonably limited in geographic extent. *Hess*, 808 A.2d 917. The party challenging the geographic restriction bears the burden of demonstrating unreasonableness. *Nat. Bus. Servs., Inc. v. Wright*, 2 F. Supp. 2d 701, 708 (E.D. Pa. 1998) (citing *John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164, 1169 (Pa. 1977). This burden cannot be met simply by asserting that the Agreements are unenforceable for lack of a geographic term. *See Victaulic*, 499 F.3d at 237 (noting that a "per se rule against broad geographic restrictions would seem hopelessly antiquated"). Both Pennsylvania courts, and federal courts applying Pennsylvania law, have upheld broad geographic restrictions were they were consistent with the scope of the employee's duties. *Id.* (citing cases in which broad geographic restrictions were reasonable so long as they were "roughly consonant with the scope

26

of the employee's duties"). Courts also uphold agreements lacking any geographic limits where "the employee's duties and customers were equally broad." *PharMethod, Inc. v. Caserta*, 382 F. App'x 214, 220 (3d Cir. 2010) (citing *Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469, 476 (E.D. Pa. 2007)). Moreover, even where an agreement has been found to be overbroad, it is within the power of the court to reform the agreement in order to make it reasonable. *Bell Fuel Corp.*, 544 A.2d at 457 ("[A] court of equity may not only remove an offensive term, but may supply a new, limiting term and enforce the covenant as so modified.").

It is not possible, based solely upon the pleadings, to determine whether the geographic scope in this case is reasonable. Plaintiff's Complaint does not state, with any specificity, the states in which it conducts business, nor does it provide any indication as to the geographic scope of the Defendants' duties.[10] Further factual development is required in order to determine if the lack of a geographic limitation is fatal to Plaintiff's case. Moreover, even if, at a later date, we were to answer that question in the affirmative, it would be within this Court's power to supply a more reasonable limiting term. For these reasons, we cannot resolve this question on the pleadings.

---

[10] Plaintiff's Complaint states that Machine Support provides services "around the globe." However, the word "global" "gives no useful indication of exactly where [the plaintiffs] products are actually sold for comparison against the scope of [the defendants] work." *Victaulic*, 499 F.3d at 238 n.6.

## III.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss of Defendants Pieter Johannis Leendert

Okkerse, Wayne Blanchard, Frank Powers, and Bobby Hampton will be denied.

An appropriate Order follows.

**BY THE COURT:**

**R. BARCLAY SURRICK**

28